This is Appeal 22-1138, and we'll begin with oral argument, Mr. O'Rourke, from you.  Good morning. Thank you, Your Honors. Good morning. This appeal of a shareholder dispute presents two very narrow legal issues. One, does the district court exceed its authority by remanding the case to state court more than 30 days after the case was appealed, or I'm sorry, removed? And two, does the narrow subject or domestic relations exception apply? The removal issue, I think, is very simple. Can I interrupt you early, and I apologize for doing that? Certainly. I wouldn't want to get interrupted early. Not a problem, Your Honor. But the reason I'm doing that is because does the death of Don Ruggles moot the appeal? Well, that's a very good question, and it's one that I've struggled with, Your Honor, since his death, and I think arguably it probably does, simply because the underlying complaint solely sought injunctive relief. Right. Now, I do understand from counsel that whether this case is remanded to federal district court or to state court, they're going to amend and assert damages claims, but we're not there yet. So I did struggle with that question, and when we filed the initial brief, of course, Mr. Ruggles, Don Ruggles, was still alive. He passed afterwards. So I think arguably it does moot this case, and what would presumably happen is if the case is dismissed, then, frankly, we get past all of these issues whatsoever because if Greg refiles, and if he refiles in state court, we will again remove, and there's no dispute then, no dispute whatsoever that jurisdiction will be proper because Greg is domiciled in Iowa. Don was domiciled in Florida. So if they file a claim against the estate, it would be based on Don's domicile, and then this whole issue becomes. So, Mr. O'Rourke, if the injunctive relief had two dimensions to it, right? One is there's absolutely no question about mootness. That was the challenge to compensation. Well, with Don's passing, the compensation doesn't matter anymore. He's not serving as the executive officer of the company. Correct. That way. If the case is refiled, would it be refiled then? This is all hypothetical. I know that. It hadn't happened. Just on the first aspect of the injunctive relief, whether there should be some kind of constructive trust over the voting shares of the company or. . . Well, my understanding. . . Don doesn't hold them anymore, right? They're held in his estate or they're held by his current former wife or somebody. Correct. My understanding from talking to counsel is that they do intend to refile and seek monetary damages for the past compensation that Don was paying himself that they contend was more than should have been paid. Oh, I see. Okay. That's definitely outside the scope of the injunctive relief that was sought here. Correct. Because solely injunctive relief was sought here, based solely on Don. . . Initially, I should say, based solely on Don's decision to pay himself more than what Greg agreed to. And then after that was filed, there was a subsequent action where Don removed Greg and two others from the board and they sought to bring that in. Although I don't think the complaint was formally amended, it was addressed in a motion. Okay. And the reason I interrupted you is because if, and I really appreciate your candor, if it's moot, can't we stop there? Yes. We don't have to answer these questions about 1446 and, you know, are these limitations there in 1447? Are they jurisdictional? Are they procedural? What, you know, what exactly are they? I think you're exactly right, Your Honor, and I think the court has the authority at any time to address whether or not a claim is moot. So I think the court absolutely could make that decision and avoid the law school civil procedure test that we're engaged in here, it seems like. Okay. Let me piggyback on Judge Scudder's question. Does the domestic relations exception to jurisdiction, is that affected by the fact that Don's passed away and that his claims could be in probate court? First of all, with respect to that exception, Your Honor, I think it's been waived because it was never raised at the district court level. In fact, there was never any objection at the district court level by Greg to the removal. I understand. I see that as two separate questions, the removal and the remand issue. But jurisdiction, we can always address. And if domestic relations exception to jurisdiction arises on appeal, if it's something that we can address, what I'm wondering is we've got a lot of case law out there. They're talking about core things, alimony, divorce, child custody, penumbra, things going broader than that. If we reach it, we've got to make this call as to what's ancillary and what's not ancillary. Does the probate of Don's estate affect that application of that exception at all? That's a very good question. I'm not aware of case law addressing that, Your Honor. From our standpoint, we never get to the domestic relations exception because at its core, this is a fight between two shareholders. Okay. This has nothing to do with a divorce or alimony or any of the penumbra of events that they often lump into these cases. This is an argument that arises years and years after the divorce was final, years after Don's ex-wife, Greg's mother, passed, years after the settlement agreement was done. I mean, this case from the beginning, in our opinion, should have been filed as a separate action. What is Mr. Churchill supposed to do, though, with this retained jurisdiction clause? You've got a retained jurisdiction clause in the marital settlement agreement. You've got it in the settlement of Chris's case. Putting oneself in Mr. Churchill's shoes, what does he do as a result of that retained jurisdiction clause? Nothing in this case because this case has nothing to do with those agreements. What this case revolves around is the current or then current 2021 management of the business, removal of directors or board members or alleged overpayments. None of those issues even come close to being addressed in the settlement agreements, and therefore, the retained jurisdiction clause really has nothing to do with this case. If he was seeking to enforce a settlement agreement from before, we'd be having a different conversation, but he's not. When you look at a complaint, it has nothing at all to do with the divorce action. It has only to do with the operation of the business and a fight between the two owners. So I don't think the retained jurisdiction clause does anything to make jurisdiction appropriate in the circuit court because I think it should have been filed as a brand new action. Is that a different way of saying, in your view, that there's no construction of the settlement agreement or the divorce agreement from way back when? There's no construction of that that will resolve the allegation of the breach of fiduciary duty. That's exactly correct, Your Honor. The issue is, according to Greg's side, was Don overpaying himself? Did that put the company at risk for IRS audits, IRS penalties, IRS assessments because he was overpaying himself? That's the sole issue. So that has nothing to do with the settlement agreement and the divorce case. That didn't even address what Don would be paid 20-some years later. Do we read from those emails that are attached? I think they're relatively recent, just before Don died, that part of the resolution of the Chris Ruggles suit was Don paid Chris, and it might have been some certain, but it took like 16 years to make that payoff. Is that correct? It was a period of time. I can't tell you it was 16. I know it was an extended period of time to pay off Chris, and then once Chris was paid off, I believe in 2015, then Greg and Don were the sole owners of the company. All right. Thank you. Your Honor, I'm happy to address any other questions. Otherwise, we would ask that the court reverse the district court's decision or, in the alternative, dismiss the case as moved. You'll also have some time on rebuttal.  Very good. Thank you, Mr. O'Rourke. Mr. Churchill will hear from you now. Good morning, Your Honors. Good morning to Daniel Churchill. I represent Greg Ruggles, who is the 99% shareholder, as the court's obviously been informed very well for a number of years. In 2015, what happened, just for clarification of your prior question, is that Greg exercised under the shareholder agreement his right to buy his brother's interest under that shareholder agreement. So there was some litigation involving the price and all those terms, but that payment and redemption or purchase of shares by Greg spanned a number of years because of the structure that they worked out between themselves as to the payment. Finally, then, what happened is the father said, I want him paid off. The company will borrow the money. I want him paid off. So the company loaned the money then to Greg, and that's the reason it took an additional time period. And that was in 2021? Correct. No, not 20—it was 2015-16, in that era, Your Honor. What happened in 2021 that precipitated those emails? What happened in 2021, Your Honor, is that Donald put a demand on Greg. First of all, keep in mind, Donald had a 1% interest in the company. That was all voting stock. So Greg could do nothing to challenge the voting management of the company. The board of directors operated the company by decision. They had bylaws to follow. In 2021, the debt finally was totally paid off. In other words, Greg had paid back the company for the loan that it had advanced to him so he could pay his brother, Chris. At that time, father came to son and said, I want the same money that I was getting when the distribution was in mining. In other words, when the stock was, prior to my wife, my former wife, mandating a family settlement agreement. I want that same money now. He had no legal right to it. He's living in Florida at that time. It raised a serious problem with Greg's reporting of the income of XPAC as a sole shareholder. This is a sub S, gentlemen. It's a sub S, so all the earnings of XPAC flow through and go into the tax return of the sub S shareholders. 1% for Don, 99% for Greg. So Greg started to get concerned because we're taking excessive deductions on the corporate tax return to the extent that those deductions may not be reasonable in the eyes of the IRS. We're taking a deduction then and we're catapulting it over. But in addition, the real fundamental fact that was there was when you look at the marital settlement agreement. It has a provision in it that talks about the additional covenants are as follows. This is between Mary Jo and Donald. And it says, quote, Donald Ruggles should not transfer without adequate consideration. Adequate consideration is defined as the fair market value as determined by an independent qualified appraiser, a substantial portion of the assets of export packaging to any other entity without the approval of Christopher and Greg. Now, that was in 2002. And so what Dad was doing is he's saying, I don't care if I'm not working. I don't care that I'm not entitled to it. I'm taking it. Greg said, no, you're not. I'm going to stop it. And that's what precipitated the filing in 2021 against the father. Well, then we had the major change of event April 9th of this year. Speak to, if you could, Judge Scudder's question concerning mootness. The mootness, yes. I don't think it is moot because the claim within the pleadings that we filed in the old litigation, the state court litigation, alleged breach of fiduciary duty. Breach of fiduciary duty brings monetary damages. I recognize that the pleadings, we don't get injunctions against decedents. We know that. And I recognize fully that we're going to have to go back now and amend in the state court the pleading to see whether or not we can amend at that time in that forum for monetary damages under the breach of fiduciary duty claim. I mean, all the injunctive relief is gone now. Even the constructive trust is because the shareholder agreement between these parties, between EXPAC, between Donald Ruggles and Greg Ruggles, actually provides for Greg to buy the stock at no greater the price than he paid Chris. But in addition, the trust of Donald Ruggles said, I give all the stock, the voting stock, to my son, Donald, my son Greg, on the condition that he's alive at the date of my death, free of any abatement for taxes, et cetera. So there is no payment required now for the shares of stock. And it says as soon as practical. Well, he died April 9th. We still don't have the stock power transferring. So there are still disputes rendered involving those issues to where it's not moot in my opinion. Okay. All right. I think we're using mootness in slightly different ways. I'm sorry. No, no, no. No, there's no reason to be sorry. This is why we wanted you all here to talk this through. Okay. And that is I think what you're saying strikes me as quite fair. Maybe there is some dispute about who owes what or who doesn't to just kind of get this all resolved in the aftermath of Don's passing. Yes. Okay. But as the case comes to us, as it was removed to the district court and now is being appealed, it comes against the back or on the back of that motion that Greg first filed in state court. I agree. Okay. And I agree with your point on mootness. Okay. I think from an appellate standpoint, I think it probably is moot because, number one, how does diversity of citizenship apply now when the person is deceased? It went out the window. But at the time the appeal was filed, it was not moot. And so I had troubles in my own mind thinking through is it retroactive or not. I couldn't answer that question. The only thing we can be interested in is mootness for the purposes of federal jurisdiction. If there's some other controversy that lingers over the resolution of the corporate affairs or the shares or anything like that, well, it may not be moot between you all back home in the state court. That's precisely right. Okay. We've talked about it several times that once the appeal was filed, Mr. Ruggles was alive. He's no longer alive. So I don't have any – I don't see that I have any remedy before this court. It's been a healthy exchange. So, I mean, I appreciate your honesty. I think we got it sorted out. Yeah, and I think, you know, to the extent that if it wasn't moot, if I can play that card just for a moment. If it wasn't moot, you have an excellent set of facts to clarify 1447D in this case because it's not a question of anybody who's not a diverse party because Don Ruggles was at that time living in Florida. However, when his divorce was rendered, he was an Illinois resident. He was married to Mary Jo. And that case proved when we started it, and we've been in the case twice now, once with Chris and Greg and now with this case. So we went back to the original forum thinking that was the most appropriate place to bring the issue to seek enforcement of the marital settlement agreement, which I just read to you. And I say that when he signed that marital agreement, he agreed he wouldn't dismember the company by excess compensation. You were talking about seven figures here. So it's a lot of money. And EXPAC is still an ongoing corporation. Oh, yes, very much so. It's a sub-S. And as I said, the trust of Mr. Ruggles, Sr. provides by mandate that the shares of the voting stock, the 1%, are to go to his son, Greg Ruggles, our client. Well, it's set as soon as practical. We just haven't gotten it yet. But there is an estate open, as you know, in Florida. We substituted in Ms. Ruggles, Ms. Ruggles the widow, and she is the executor and also co-trustee of the trust. And what's her first name? Jackie, Jacqueline. And so when I read this to you earlier this morning about he won't do certain things, we say that's exactly the violation that he was committing because he was taking money out of EXPAC without adequate consideration. He's not working there. His wife had a job, too. She didn't work. The board never approved her being hired. These are all fact questions that are not before you, I admit. But they're very important questions from the standpoint of the breach of fiduciary duty claim and the compensation claim that is still due the 99% shareholder for the wrongful removal of consideration from EXPAC. That's my theory. Now, from that standpoint, you know, and I go back, and the point was well taken. I'm not surprised it was raised right out of the chute. Is there mootness with respect to the appeal? I think with respect to the appeal, you're right. Is there mootness with respect to the case? No, I don't believe that's there. But there's two documents that I would ask the court to look at from the standpoint if it's not moot and if you feel that you need to go ahead and decide it. Of course, the two statutes, and I won't bore you with that. You're, well, much more educated on those points than I ever would be. But the two points were Magistrate Hanley Hawley's decision. The last paragraph particularly, when you read that decision, the fact remains that Gregory filed a verified motion in an already existing Illinois state court matter, not as an independent action in Illinois state court, and Donald improperly sought to remove that matter to federal court several years after the commencement. I think that captures the whole case as far as what we're here for today. In addition, I would ask the court to take a look at our jurisdictional memorandum that Ms. Riggs of our office put together in the beginning. I think it capsulizes the issues, and I wouldn't want to bore you with trying to regurgitate it, but it does enumerate all of those issues. I'd be glad to answer any further questions you may have of me. Thank you, Mr. Churchill. Thank you very much. It's been a pleasure to appear before you. Thank you very much. Mr. O'Rourke, a couple minutes here for rebuttal. Your Honor, it seems like based on counsel's statements, we've reached a resolution. The case is moot. I think that's been conceded. You're correct, Dan's correct, that there are underlying issues separate and apart from the issues before the court, but with that, we believe the case should be dismissed. Can I give counsel a compliment, two compliments? First off, it's very clear that you as attorneys get along, and I wish all counsel in all our cases got along as well as you two did. Also, another compliment, you hit the important points of your briefs and you got out. You were not verbose and not lengthy, and given the amount of reading that we have to do, it's very much appreciated. Thank you, Your Honor. He knew I was driving up this morning, leaving at 4.30 this morning. He texted me to say there are three cases ahead of us, don't panic. I'm on the tollway trying to get that done. So thank you, Your Honor. Very good. Thanks to both of you, and the case will be taken to revisement.